IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
DETROIT OFFICE

| | | |
|---|---|---|
| JANET DEMKO, | ) | |
| | ) | |
| Plaintiff, | ) | 2:17-cv-13359 |
| | ) | |
| v. | ) | |
| | ) | |
| FINANCIAL ASSISTANCE, INCORPORATED, | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, JANET DEMKO, by and through her attorneys, SMITHMARCO, P.C., and for her complaint against the Defendant, FINANCIAL ASSISTANCE, INCORPORATED, Plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq., and the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

### II.   JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

4. JANET DEMKO, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Clarkston, County of Oakland, State of Michigan.

1

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Bell Tower at Old Town Square.

6. The debt that Plaintiff allegedly owed Bell Tower at Old Town Square was for charges relating to Plaintiff's then primary residence; hence the debt was incurred for the personal use of Plaintiff and/or used for household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

9. FINANCIAL ASSISTANCE, INCORPORATED, (hereinafter, "Defendant") is a corporation that has its principal place of business and its offices located in the City of Bellevue, State of Washington.

10. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

11. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

12. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

13. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

14. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

15. At all relevant times, credit reports as alleged in this pleading are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

## IV.   ALLEGATIONS COMMON TO ALL COUNTS

16. On or about September 9, 2015, Plaintiff rented an apartment at Bell Tower at Old Town Square in Oregon.

17. The apartment rented by Plaintiff at Bell Tower was managed by Marathon Management.

18. Plaintiff signed the residential lease for her apartment at Bell Tower on September 9, 2015.

19. On September 9, 2015, Plaintiff was presented with a document entitled "Repair/Replacement Charge Agreement."

20. The Repair/Replacement Charge Agreement presented to Plaintiff by Bell Tower and/or Marathon Management on September 9, 2015 listed specific prices for repair and replacement of certain items and cost for cleaning.

21. The lease signed by Plaintiff and Marathon Management on behalf of Bell Tower on September 9, 2015 stated, *inter alia*: "This rental agreement and all attachments represent the entire agreement between the parties and supersedes any verbal written agreement, understandings, or representations not specifically contained herein."

22. The Repair/Replacement Charge Agreement was, therefore, part of the lease agreement entered into between Plaintiff and Bell Tower.

23. The lease agreement entered into between Plaintiff and Bell Tower was for one year.

24. In or around July 2016, Plaintiff gave Bell Tower notice of her intent to vacate the premises.

25. On July 27, 2016, Bell Tower confirmed Plaintiff's notice to vacate on September 8, 2016.

26. On September 8, 2016, Plaintiff moved out of the apartment at Bell Tower.

27. Bell Tower and/or Marathon Management conducted a walk through of the apartment and a duly authorized representative of Bell Tower and/or Marathon Management took notes of the walk through, a copy of which was provided to Plaintiff.

28. The walk through notes reflected that "touch up" paint was necessary as was a "normal clean."

29. On or about September 23, 2016, the Resident Services Manager of Bell Tower and/or Marathon Management sent Plaintiff a letter that "*serves as a **full accounting and final notice** of unpaid balances in connection with [Plaintiff's] recent move out.*" (Emphasis added).

30. The letter sent to Plaintiff by the Resident Services Manager of Bell Tower and/or Marathon Management dated September 23, 2016 showed a total balance outstanding of $672.63.

31. The "full accounting and final notice of unpaid balances" included amounts for items such as painting, for example, that were considerably increased over the original amounts quoted by Bell Tower and/or Marathon Management in the Repair/Replacement Charge Agreement submitted to Plaintiff and agreed to by Plaintiff and Bell Tower and/or Marathon Management on September 9, 2015.

32. On or about November 11, 2016, the Resident Services Manager of Bell Tower and/or Marathon Management sent Plaintiff a second letter that Bell Tower and/or Marathon Management asserted was to "*serves as a full accounting and final notice of unpaid balances in connection with [Plaintiff's] recent move out.*"

33. Notwithstanding the fact that Bell Tower and/or Marathon Management had already submitted an over-inflated accounting of putative unpaid balances, Bell Tower and/or Marathon Management sent Plaintiff a revised accounting for an additional $1,720.40 for replacing the carpet in the apartment.

34. In or around January 2017, Bell Tower and/or Marathon Management assigned the putative debt owed by Plaintiff to Bell Tower and/or Marathon Management to Defendant for collection.

35. On January 5, 2017, Defendant sent Plaintiff a dunning notice apprising her of the fact that the Debt had been assigned to Defendant for collection and noting that the Debt had a balance of $2,460.89

36. In its correspondence to Plaintiff dated January 5, 2017, Defendant apprised Plaintiff of her right to dispute the validity of the Debt and to seek validation.

37. On January 27, 2017, Plaintiff responded to Defendant's correspondence dated January 5, 2017 and disputed the Debt and requested validation of the Debt.

38. On February 27, 2017, Defendant responded to Plaintiff's dispute by simply sending a document entitled "Bad Debt Transmittal Report" which only served to reiterate the putative charges listed by Bell Tower and/or Marathon Management in its correspondence to Plaintiff on or about November 11, 2016.

39. On May 18, 2017, Plaintiff mailed to Defendant a second dispute of the Debt.

40. On July 22, 2017, Plaintiff disputed the Debt to one or more "consumer reporting agency" as that term is defined by §1681a(f) of the Fair Credit Reporting Act, (hereinafter, FCRA). 15 U.S.C. §1681 *et seq.*

41. In her correspondence to the credit reporting agencies, she specifically delineated the nature of her dispute of the Debt and why she contended that the Debt was not owed in the amount being collected by Defendant.

42. On July 26, 2017, Defendant mailed a correspondence to Plaintiff acknowledging her dispute to the credit reporting agencies and invited Plaintiff to produce documentation to support her dispute.

43. Notwithstanding the content of Defendant's correspondence dated July 26, 2017, Plaintiff has engaged in multiple telephone calls with Defendant wherein she has explained the nature of the Debt and the nature of her dispute. Moreover, Plaintiff has sent Defendant documentation to support her dispute and to show that the amount being collected by Defendant relative to the Debt is an excessive amount and contrary to the amounts agreed upon by Plaintiff and Bell Tower and/or Marathon Management.

44. In response, Sasha Ray, a duly authorized representative of Defendant has informed Plaintiff to stop sending documentation; moreover, Defendant informed Plaintiff that it was not going to review the documentation submitted by Plaintiff.

45. Defendant has persisted in its efforts to collect the Debt from Plaintiff in an amount that exceeds the amount owed.

46. Defendant has reported the Debt and the balance to the credit reporting agencies.

6

## COUNT I: VIOLATIONS OF THE FDCPA

47. In its correspondence to Plaintiff, Defendant has misrepresented the character, amount, and/or legal status of the Debt, given that the Debt being collected by Defendant is in an amount over an above that agreed to by the Plaintiff and Bell Tower and/or Marathon Management and Defendant has been shown documentation supporting as such.

48. Defendant has reported the Debt to one or more consumer reporting agency with a balance of approximately $2,400.

49. Despite the fact that Plaintiff did not owe the Debt in the amount claimed to be owed by Defendant, Defendant reported the Debt with a balance of in excess of $2,400.

50. Defendant's failure to comply with §1692e(8) therefore was deceptive and misleading since, among other things, it deprived future users of Plaintiff's consumer reports of essential information relevant to their assessment of Plaintiff's credit worthiness and of Plaintiff's eligibility for other benefits for which the report may be employed and adversely impacted Plaintiff's credit score under certain credit scoring systems.

51. In its attempts to collect the debt allegedly owed by Plaintiff to Bell Tower at Old Town Square, Defendant violated the FDCPA, 15 U.S.C. §1692 in one or more of the following ways:

    a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

    b. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

    c. Communicated or threatened to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed in violation of 15 U.S.C. §1692e(8);

    d. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

52. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## COUNT II: VIOLATIONS OF THE FCRA

53. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

54. At all relevant times, credit reports as alleged in this pleading are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

55. Defendant has been providing derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to various credit reporting agencies, as that term is defined by 15 U.S.C. 1681a(f).

56. Defendant is aware that the credit reporting agencies to which they are providing this information are going to disseminate this information to various other persons or parties who will be reviewing this information for the purpose of extending credit, insurance or employment.

57. The inaccurate information of which Plaintiff complains is an account, or trade-line, that reflects a debt owed by Plaintiff.

58. Plaintiff has repeatedly disputed the Debt and the amount of the Debt to Defendant and has showed Defendant why the Debt is not owed in the amount claimed.

59. Despite the foregoing, Defendant has disseminated information that the Debt is owed by Plaintiff.

60. The inaccurate information negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness.

61. The credit reports have been and continue to be disseminated to various persons and credit grantors, both known and unknown.

62. On July 22, 2017 Plaintiff disputed the inaccurate information with the CRA(s) by written communication to its representatives and by following the aforementioned reporting agency's established procedure for disputing consumer credit information.

63. Furthermore, Plaintiff enclosed with her written dispute to Defendant documents and other information that either proved that the disputed information contained within her credit report was inaccurate or, at the very least, provided evidence that supported Plaintiff's contentions that the disputed information was inaccurate.

64. Upon information and belief, within five (5) days of Plaintiff disputing the inaccurate information, Defendant was notified of Plaintiff's dispute and the nature of the dispute.

65. Upon information and belief, within five (5) days of Plaintiff disputing the inaccurate information, Defendant received notification from one or more credit reporting ageny of Plaintiff's dispute and the nature of the dispute.

66. Defendant then and there owed to Plaintiff a duty to assist the credit reporting agency in a re-investigation into the disputed facts that are being reported about Plaintiff.

67. Notwithstanding Plaintiff's efforts and Defendant's duties, Defendant continued publishing the inaccurate information and Defendant continued to publish and disseminate such inaccurate information to other credit reporting agencies.

68. Despite Plaintiff's efforts to date, Defendant has nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA, has failed to remove the

inaccurate information, has failed to note the disputed status of the inaccurate information and has continued to report the derogatory inaccurate information about Plaintiff.

69. Plaintiff has been damaged, and continues to be damaged, in the following ways:

   a. Denial of credit by Huntington Bank;

   b. Out of pocket expenses associated with disputing the information only to find the information to remain on the credit report;

   c. Emotional distress and mental anguish associated with having incorrect derogatory personal information transmitted about Plaintiff to other people both known and unknown;

   d. Denial of credit, loans, financing and/or other damages, not yet known by Plaintiff; and,

   e. Decreased credit score which may result in inability to obtain credit on future attempts.

70. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant herein.

71. At all times pertinent hereto, the conduct of Defendant, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of Plaintiff herein.

72. Defendant violated sections 1681n and 1681o of the FCRA by engaging in the following conduct that violates 15 U.S.C. §1681s-2(b):

   a. Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

   b. Willfully and negligently failing to review all relevant information concerning Plaintiff's account provided to this Defendant;

   c. Willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

    d. Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

    e. Willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning the Plaintiff to credit reporting agencies and other entities despite knowing that said information was inaccurate; and,

    f. Willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2.

73. Defendant's conduct was a direct and proximate cause, as well as a substantial factor, in causing the injuries, damages and harm to Plaintiff that are outlined more fully above, and as a result, Defendant is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as such other relief permitted by law.

### V. JURY DEMAND

74. Plaintiff hereby demands a trial by jury on all issues so triable.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JANET DEMKO, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

    a. All actual compensatory damages suffered;

    b. Statutory damages of $1,000.00 for Defendant's violation of the FDCPA;

    c. Statutory damages of $1,000.00 for Defendant's violation of the FCRA;

    d. Punitive damages;

    e. Plaintiff's attorneys' fees and costs; and,

    f. Any other relief deemed appropriate by this Honorable Court.

                                              Respectfully submitted,
                                              **JANET DEMKO**

                                  **By:**    s/ David M. Marco
                                              Attorney for Plaintiff

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:    (312) 546-6539
Facsimile:     (888) 418-1277
E-Mail:         dmarco@smithmarco.com